813 So.2d 999 (2002)
Edward Thomas PARTLOW, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-3695.
District Court of Appeal of Florida, Fourth District.
March 20, 2002.
Rehearing Denied May 3, 2002.
Kathleen Cooper Grilli of Grilli & Corvato, P.A., Hollywood, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Melanie Ann Dale, Assistant Attorney General, West Palm Beach, for appellee.
FARMER, J.
Because the pertinent facts and legal issue are identical, the outcome in this case should be no different than the one in State v. Stapleton, 764 So.2d 886 (Fla. 4th DCA 2000). In each of these cases, the defendant pleaded to a sexual offense without being informed of the sexual offender registration requirement and promptly thereafter moved to withdraw the plea.[1] Both defendants stated unequivocally that they would not have entered the plea if they had known of the requirement. In Stapleton the motion was filed within 30 days of the plea, while in this case it was filed even more promptlyjust 10 days after the plea and sentencing. In neither case is there any plausible argument of prejudice to the state. Stapleton obviously stands for the proposition that these circumstances amount to good cause. As we did in Stapleton, therefore, we hold that this defendant "should have been advised of the known consequences of his plea at the time of the taking of the plea." 764 So.2d at 888.
Stapleton is itself in keeping with the well established, general policy of Florida *1000 law. See Brown v. State, 92 Fla. 592, 109 So. 627 (1926) (accused should be permitted to withdraw plea of guilty entered unadvisedly when application therefor is duly made in good faith and sustained by proof and proper offer is made to go to trial on plea of not guilty, or other valid plea); Eckles v. State, 132 Fla. 526, 180 So. 764 (1938) (same); Canada v. State, 144 Fla. 633, 198 So. 220 (1940) (same); see also Soto v. State, 780 So.2d 168 (Fla. 2nd DCA 2001)(defendant should be permitted to withdraw plea upon proper motion and proof that plea was entered under mental weakness, mistake, surprise, misapprehension, fear, promise, or other circumstances affecting his rights); Roberts v. State, 670 So.2d 1042 (Fla. 4th DCA 1996)(same).
This policy is pertinently demonstrated by Daniels v. State, 716 So.2d 827 (Fla. 4th DCA 1998), where we held that the mandatory 2 year revocation of a driver's license under section 322.055(1)although not directly included within the statute under which the sentence for the offense involved in the conviction was specified was sufficiently direct for purposes of requiring the court to grant permission to withdraw the plea. In Daniels the motion to withdraw was made after sentencing and actually appears to have been filed within the same 10 day period as this case. Thus if the trial court's decision denying permission to withdraw the plea were correct, Florida law would be understood to require withdrawal when the unadvised consequence was the 2 year loss of a driver's license but not when the unadvised consequence was the lifelong imposition of sexual offender registration.
Even accepting the Stapleton conclusion that sexual offender registration is merely a collateral effect, we nevertheless proceed to ask whether it matters to the voluntariness of the plea that sexual offender registration is collateral rather than direct. We do not think it does. As we implicitly determined in Daniels, the real issue is whether a plea to a sexual crime lacking advice of the registration requirement may with any confidence be thought sufficiently informedand therefore genuinely voluntary[2] that a trial judge could rightfully refuse to allow it to be withdrawn so soon after the plea was made. Just as we did in Daniels and Stapleton, we say no and direct the trial court to allow that the plea be withdrawn. But see Benitez v. State, 667 So.2d 476 (Fla. 3d DCA 1996) (sexual predator registration is collateral consequence of plea which was not required to be covered in the plea colloquy).
In Nelson v. State, 780 So.2d 294 (Fla. 1st DCA 2001), where the facts are identical, the first district affirmed an order refusing to allow the plea to be vacated, holding that Stapleton did not require a reversal because the issue presented is one of discretion. The Nelson court explained that:
"Because Nelson did not allege any affirmative misrepresentation, but only the failure to advise him of a collateral consequence, we conclude that the trial court's denial of Nelson's motion to withdraw his plea did not result in manifest injustice."
780 So.2d at 295.
With respect we disagree. There are several things that a defendant who contemplates pleading guilty or no contest to a crime might be charged with knowing from publication of laws, but we still insist of having the defendant reminded of them before he pleads. Among them are the right to trial by jury, the right to counsel, the right to appeal, notice that the state *1001 will seek habitual felony offender sentencing, and now even the consequence of deportation of alien defendants as a result of the conviction. Presumptive knowledge of the law as a categorical basis for refusing a timely application to vacate a plea would seem contrary to the policy of liberally granting such relief in favor of the inclination for trials on the merits in criminal cases. Timothee v. State, 721 So.2d 776 (Fla. 4th DCA 1998). It would also seem inconsistent with the command of rule 3.170(f) that the court "shall on good cause, at any time before a sentence, permit a plea of guilty to be withdrawn."[3] In short, under the rationale of Nelson, on this issue with identical facts, the law would nonetheless tolerate directly contradictory outcomes in Stapleton and Nelson.
The coercive power of law is justifiable only if legal outcomes are predictable.[4] Conflicting outcomes on identical legal issues and facts may reasonably be perceived by the public as having been based on the subjective views of judges rather than on the objective force of law. When we allow different outcomes on identical facts and legal issues, we place an undue burden on public acquiescence of the legal coercion in our decisions. In short, there are strong prudential reasons to give this defendant the same relief we did under the same circumstances in Stapleton and to disagree with the contrary outcome in Nelson. We do so here and certify conflict.
REVERSED.
STEVENSON, J. concurs.
SHAHOOD, J., dissents with opinion.
SHAHOOD, J., dissenting.
I would affirm the denial of appellant's motion to withdraw his plea.
In his motion to withdraw plea, appellant claimed that he was induced into entering the plea because of concerns for his mother's health, that he would be denied access to his minor child, or that he was not advised of the sex offender registration requirement. I would affirm, without comment, the first two issues raised by appellant and discuss only the third issue raised.
With respect to the sex offender registration requirement, courts have held that a defendant need not be informed of these designations before entering a plea, because they are collateral, rather than direct, consequences resulting from his convictions of certain sexual offenses. See Nelson v. State, 780 So.2d 294 (Fla. 1st DCA 2001); Donovan v. State, 773 So.2d *1002 1264 (Fla. 5th DCA 2000); Pearman v. State, 764 So.2d 739 (Fla. 4th DCA 2000).
In State v. Stapleton, 764 So.2d 886 (Fla. 4th DCA 2000), the trial court granted the defendant's motion to withdraw his guilty plea to lewd assault, because he had not been informed that he would have to register as a sexual predator under section 943.0435, Florida Statutes, or that he was subject to the Jimmy Ryce Act. Although this court acknowledged that the application of these provisions was a collateral consequence of the plea, it nevertheless affirmed the trial court's discretion to determine that Stapleton should have been advised of them.
In Nelson, the defendant appealed from the trial court's denial of his motion to withdraw plea on the grounds that he was not informed that upon conviction, he would be designated as either a sexual offender or sexual predator and that his driver's license would reveal that classification.
The Nelson court acknowledged Stapleton, a factually similar case, yet distinguished it by holding that the trial court in Nelson exercised its discretion in denying the motion to withdraw. See Nelson, 780 So.2d at 295. Because Nelson did not allege any affirmative misrepresentations, but only the failure to advise him of a collateral consequence, the First District concluded that the trial court's denial of Nelson's motion to withdraw his plea did not result in manifest injustice. See id.
Like Nelson, the trial court in this case, in the exercise of its discretion, held that appellant knowingly, intelligently and voluntarily entered his plea with a full understanding of the criminal sanctions against him. Because appellant did not allege any affirmative misrepresentation, but only the failure to advise him of a collateral consequence, the trial court's denial of his motion to withdraw plea did not result in a manifest injustice.
NOTES
[1] See Fla.R.Crim.P. 3.170(f) ("The court ... shall on good cause, at any time before a sentence, permit a plea of guilty to be withdrawn...").
[2] See Fla.R.Crim.P. 3.172(a) ("Before accepting a plea of guilty or nolo contendere, the trial judge shall be satisfied that the plea is voluntary ...").
[3] We recognize that in this case the plea and sentence took place in a single proceeding. Because the sentence imposed is the one negotiated in the plea discussions, there is no basis to worry that the desire to withdraw the plea was really induced by the unexpected severity of the sentence rather than the matter not disclosed. Again, as the motion to withdraw the plea was made within 10 days of that plea no possible prejudice to anyone can be claimed. Daniels stands on the premise that discretion is abused under these circumstances when withdrawal of the plea is not allowed.
[4] "The right answer does not depend on something idiosyncratic about the person who is deciding, or on controversial moral and political claims that are the stuff of debate in the legislative process. Whether this vision of a rule of law, not of individuals, is just an illusion does matter. Suppose legal decision is essentially indistinguishable from decisions based on ordinary moral and political arguments.... Then the idea that there is something special, more solid, about the law should be dispelled, or seen through clear eyes as a false myth that is useful for the elite or for a supine and ignorant populace. For some writers, revelation of the character of judicial decision exposes the power of the judiciary as illegitimate." Kent Greenawalt, How Law Can Be Determinate, 38 UCLA L. REV. 1, 2-3 (1990).